IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA | 19-CR-6182-FPG |
| -vs- | **GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING STATEMENT** |
| JEFFREY MACIEJEWSKI, | |
| Defendant. | |

---

The United States of America, through its attorneys, James P. Kennedy, Jr., United States Attorney for the Western District of New York, Kyle P. Rossi, Assistant United States Attorney, of counsel, hereby makes and files its response to the Defendant's Sentencing Statement filed on February 7, 2020.

### DISCUSSION

After reviewing the defendant's filing (Docket 14), the government is compelled to respond to, what the government believes, are erroneous claims by the defendant with respect to recidivism rates amongst child pornography offenders, and arguments that child pornography possessors, and the defendant in particular, present a low risk to children.

Specifically, the defendant argues the following:

Docket 14, ¶ 43: "Congress's actions with respect to the child pornography guideline have stemmed in large part from the belief that those who view child pornography are actually child molesters. Under this view, punishing child pornography possessors serves as a proxy for punishing child sexual abusers. *Aside from the lack of evidence to support this belief in general*, Mr. Maciejewski has not been convicted of sexually abusing a child, has not in fact sexually abused a child, and is at low risk of harming a child. This distinguishes Mr. Maciejewski from the offenders Congress had in mind, and is therefore highly relevant." (emphasis added).

Docket 14, ¶ 56: "Nor does lengthy imprisonment of child pornography possessors have any deterrent or preventive effect on the production or dissemination of child pornography. This is in part because the production and dissemination of child pornography is a widespread, international problem." (citations omitted).

Docket 14, ¶ 57: "A primary assumption underlying Congress's actions with respect to the child pornography guideline has been that possessors of child pornography are likely to sexually abuse children. *This belief is contrary to the empirical research in general, and is unjustified based on the evidence in this case. Current empirical research demonstrates that 'first-time child pornography possession only offenders appear to be very low risk of sexual recidivism [of any kind], in contrast with any prior or concurrent criminal convictions or those who engage in other sexual offending* (e.g., attempted or actual contacts with a child, production of child pornography).' (citations omitted; emphasis added).

Docket 14, ¶ 58: ". . . while a small minority of defendants convicted of possessing child pornography may again view child pornography and an even smaller minority may molest children, Jeffrey is not one of them. The sentence should reflect the fact that Congress's contrary assumption is unfounded in this case. All of the evidence indicates that Mr. Maciejewski will never view child pornography again. Supervised release with appropriate conditions is more than sufficient to ensure that he never does."

The defendant cites to the "Written Statement of Michael C. Seto, Ph.D., C. Psych. before the U.S. Sent'g. Comm'n at 4 (Feb. 15, 2012)" and the "Written Statement of Richard Wollert, Ph.D. before the U.S. Sent'g. Comm'n, at 14-17, 21-22 (Feb. 15, 2012)" in support of his assertion that child pornography offenders are not likely to reoffend and are not likely to have engaged in prior child sexual abuse. While the government has no information that the defendant has committed a hands-on offense against a child, it is inaccurate to say that the defendant does not pose a danger toward children. Additionally, neither of the sources cited by the defense support the proposition that child pornography offenders are not a risk to children.

Dr. Seto's study addressed the question about the likelihood that online sexual offenders (particularly online child pornography offenders) have either committed or will commit offline sexual offenses involving contact with a victim in two "meta-analyses." The

2

first examined the contact sexual offense histories of online offenders, whereas the second examined the recidivism rates from follow-up studies of online offenders.  Dr. Seto cited various studies that were conducted between 2005 and 2011. A portion of his study that is not referenced by the defense, noted that approximately one in two (55%) online offenders "*admitted to a contact sexual offense in the six studies that had self-report data*." *Id.*  Thus, according to Dr. Seto's analysis, 55% of child pornographers admitted to having committed a contact offense in studies that relied, in part, on the child pornographer's truthfulness about contact offenses.  This finding belies the assertion that that possessors of child pornography are not likely to sexually abuse children, or have not sexually abused children in the past.

Also absent from the defendant's submission is Dr. Seto's citation to the far more concerning *Butner Study Redux: A Report on the Incidence of Hands-on Child Victimization by Child Pornography Offenders*," by Bourke and Hernandez (2009).  That study, which is attached as Government Exhibit A, compared two groups of child pornography offenders participating in a voluntary treatment program: (1) men whose known sexual offense history at the time of judicial sentencing involved the possession, receipt, or distribution of child abuse images but did not include any "hands-on" sexual abuse; and (2) men convicted of similar offenses, who had documented histories of hands-on sexual offending against at least one child victim. The objective was to determine whether child pornography offenders were "merely" collectors of child pornography at little risk for engaging in hands-on sexual offenses, or if they were contact sex offenders, whose criminal sexual behavior involving children, with the exception of Internet crimes, went undetected. *Id.* The findings demonstrated that the Internet offenders were significantly more likely than not to have sexually abused a child via a hands-on act and

3

that the offenders who abused children were likely to have offended against multiple victims. *Id*.

The results of the Butner Study were staggering. The study found that at the time of sentencing, 115 (74%) subjects had no documented hands-on victims. *Id.* at page 13. Forty (26%) had known histories of abusing a child via a hands-on sexual act (10 of these men had a prior substantiated finding of child sexual abuse by a child protective agency, 20 were convicted previously for a hands-on crime, and 22 admitted during interviews with investigators that they previously had engaged in hands-on abusive conduct). *Id.* The number of victims known at the time of sentencing was 75, or an average of 1.88 victims per offender. *Id.* at 14.

By the end of treatment, 131 subjects (85%) admitted they had at least one hands-on sexual offense, a 59% increase in the number of subjects with known hands-on offenses. *Id.* The number of reported victims known at the end of treatment, among all offenders, was 1,777, an average of 13.56 victims per offender. *Id.* When analyzed separately, the study found that the 40 subjects who had known histories of hands-on sexual offending at the time of sentencing disclosed an average of 19.4 victims during their treatment period. *Id.* In comparison, the 115 subjects with no known histories of these crimes ultimately disclosed an average of 8.7 victims. *Id.*

A recent study conducted by the Rochester Institute of Technology involving child pornography possessors in the Western District of New York also demonstrates that child pornographers represent a real and present threat to children. The study, attached as Government Exhibit B, shows that more than half of child pornography possessors, *in this District,* have *admitted* to sexually abusing children previously unknown to law enforcement.

4

*Id.* at 40. As the study articulates, this "is a sobering fact that challenges the perception that most child porn possessors are relatively 'harmless' as compared to other sex offenders." *Id.* at 90.

The defendant sent images of child pornography to an individual that he believed was a 13-year-old minor, (PSR, ¶ 25-26), engaged in online chat groups dedicated to the exploitation of children, and masturbated to a child pornography collection that included 2,607 images and 2,125 videos of child pornography, including images depicting sadistic and masochistic sexual abuse of children, and the sexual abuse of infants and toddlers. A study is not needed to conclude that he is a danger to children. (PSR, ¶¶ 39, 44).

Common sense provides, and the defendant admitted, that he is sexually attracted to children. Common sense further provides that such a person is a danger to children, and that a prison sentence is necessary for the purpose of specific deterrence, and to deter others from engaging in similar conduct.

DATED: Rochester, New York, February 12, 2020

                                            JAMES P. KENNEDY, Jr.
                                            United States Attorney
                                            Western District of New York

By:   s/Kyle P. Rossi
       KYLE P. ROSSI
       Assistant United States Attorney
       United States Attorney's Office
       100 State Street, Room 500
       Rochester, New York 14614
       (585) 399-3966
       Kyle.Rossi@usdoj.gov